UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ALEJANDRO R. FOWLER,

                    Petitioner,

vs.                                    Case No. 3:12-cv-815-J-39MCR

SECRETARY, DOC, et al.,

                    Respondents.

_____

## ORDER

### I.  STATUS

     Petitioner Alejandro R. Fowler challenges a 2003 (Clay County) conviction for armed robbery.  Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1) at 1.  He raises eleven grounds for habeas relief.  Respondents filed a thorough Response to Petition for Writ of Habeas Corpus (Response) (Doc. 18).  They also submitted an Appendix in support thereof.[1]  Petitioner filed a Response to Order to Show Cause (Doc. 20) stating that he did not intend to file a reply but would rely on his claims as stated in the Petition.  See Orders (Docs. 8 & 19).

---

     [1] The Court hereinafter refers to the exhibits contained in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix.  Otherwise, the page number on the particular document will be referenced.

Respondents calculate the Petition is timely filed.  Response at 2-6.  The Court concludes that the Petition is timely filed. With regard to Petitioner's eleven grounds, the Court will address each ground, <u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir. 1992), <u>Dupree v. Warden</u>, 715 F.3d 1295, 1298 (11th Cir. 2013); however, upon review of the record, no evidentiary proceedings are required.

## II.  STANDARD OF REVIEW

Petitioner's claims will be analyzed by this Court pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." <u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011).  The three designated exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts.  <u>Id</u>. at 100.  <u>See</u> <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 774 F.3d 671, 678 (11th Cir. 2014) (citing <u>Harrington</u> and quoting <u>Reese v. Sec'y, Fla. Dep't of Corr.</u>, 675 F.3d 1277, 1286 (11th Cir. 2010)) (explaining that an unreasonable application of federal law is not the same as an incorrect application of federal law, and that in order to obtain habeas relief a petitioner must show that the ruling "was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement").

In its review, the Court will give a presumption of correctness of the state courts' factual findings unless rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Also, the Court will apply this presumption to the factual determinations of both trial and appellate courts. See <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003).

### III. PROCEDURAL HISTORY

To provide historical context to Petitioner's numerous grounds for relief, a brief summary of the state criminal case is provided. On March 11, 2003, Petitioner was charged by information with armed robbery. Ex. 2. The defense filed a motion in limine seeking to exclude Petitioner's reference to having a pending arrest warrant in his written statement of February 22, 2003, evidence of drugs found upon execution of a search warrant on February 22, 2003, and evidence of a drug purchase referenced in his statement of February 22, 2003. Ex. 3 at 55. The trial court granted this motion. <u>Id</u>. at 63. The defense also filed Defendant's Motion in Limine Regarding Admissibility of the Firearm Recovered in this Case. <u>Id</u>. at 64. The trial court denied the motion in limine concerning the firearm. <u>Id</u>. at 63.

The jury trial began on November 3, 2003, and continued through November 4, 2003. Ex. 4. On November 4, 2003, the jury

returned a verdict of guilty as to the armed robbery charge. <u>Id</u>. at 290. The jury found Petitioner committed the robbery, carried a firearm, and discharged a firearm during the commission of the offense. Ex. 6.

On December 4, 2003, the trial court conducted its sentencing proceeding. Ex. 7. The court adjudicated Petitioner guilty and sentenced him to thirty years of imprisonment, with a twenty-year minimum mandatory term. <u>Id</u>. at 179. The court entered judgment and sentence on December 4, 2003. Ex. 8. Thereafter, Petitioner appealed his conviction. Ex. 10; Ex. 13. The state answered. Ex. 14. On February 21, 2005, the First District Court of Appeal per curiam affirmed. Ex. 15. The mandate issued on March 9, 2005. <u>Id</u>.

On April 27, 2004, Petitioner filed a Motion to Correct Illegal Sentencing Error Pursuant to Rule 3.800(b)(2). Ex. 11. The circuit court denied the motion on June 15, 2004. Ex. 12.

On April 27, 2006, Petitioner filed a Rule 3.850 Motion for Post-Conviction Relief. Ex. 16. He filed essentially the same motion on January 13, 2007. Ex. 17. Attached to the motion as Exhibit A is a one-page, unsigned letter addressed to Uncle Ale and dated November 4, 2003. <u>Id</u>. at 98. The trial court conducted evidentiary proceedings on grounds four, five, and eight of the Rule 3.850 motion. Ex. 18. On August 21, 2010, the circuit court entered an Order Denying Defendant's Motion for Post Conviction

- 4 -

Relief.  Ex. 19.  Petitioner appealed.  Ex. 20; Ex. 21.  The state filed an answer brief.  Ex. 22.  Petitioner replied.  Ex. 23.  The First District Court of Appeal, on July 7, 2011, reversed in part on grounds six, seven and nine, and remanded the case to the trial court to either attach pertinent portions of the record refuting these grounds or for an evidentiary hearing.[2]  Ex. 24.  Otherwise, the First District Court of Appeal affirmed the circuit court's decision.  Id.  The mandate issued on August 2, 2011.  Id.

On September 13, 2011, the circuit court entered an order directing Petitioner, within thirty days, to refile a complete letter in support of his Rule 3.850 motion.  Ex. 25.  The circuit court did not receive a complete copy of the letter by the time it entered its January 9, 2012 Order Denying Defendant's Motion for Post Conviction Relief after remand.  Ex. 26 at 397.  The circuit court denied grounds six, seven, and nine, with portions of the record attached.  Ex. 26.  Petitioner appealed.  Ex. 27.  Petitioner submitted exhibits in support of his appeal brief, including the February 13, 2012 Affidavit of Rayshaun Fowler.[3]  Ex. 28.  The state filed a notice that it would not file an answer

---

[2] In this regard, the First District Court of Appeal stated that it could not conduct a meaningful review of the recantation issue without being able to review a complete copy of Rayshaun Fowler's letter and sufficient portions of the transcript that show why it is unlikely that the recantation issue would result in an acquittal upon retrial.  Ex. 24 at 3.

[3] Of note, the Affidavit it not sworn to by the affiant under penalty of perjury.

brief.  Ex. 29.  On May 1, 2012, the First District Court of Appeal affirmed per curiam.  Ex. 30.  Petitioner moved for rehearing, and on June 28, 2012, the First District Court of Appeal denied the motion for rehearing.  Ex. 31.  The mandate issued on July 16, 2012.  Ex. 30.

## IV.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One

In his first ground, Petitioner claims the trial court reversibly erred in overruling Petitioner's objection to the testimony concerning the dogs' track.  Petition at 5.  Petitioner complains that the state, over objection, presented testimony as to the dog tracking despite the lack of foundation for this testimony.  Id.  Petitioner raised this same ground on direct appeal.  Ex. 13 at 7-10.  Respondents contend, and this Court agrees, that Petitioner did not raise a claim of constitutional dimension in the Florida courts.  Response at 11.  Indeed, he does not raise a claim of constitutional dimension in this Court.

Upon review, Petitioner did not assert that the trial court denied him due process of law in violation of the Fourteenth Amendment.  Duncan v. Henry, 513 U.S. 364, 365-66 (1995).  Instead, he relied exclusively on state decisional law, arguing that the admission of the dog tracking evidence can not be deemed to be harmless error.  Ex. 13 at 9.  The Court concludes that this ground was presented on direct appeal as a claim of trial court error based on an improper trial court ruling, without an underlying due

process claim.   Thus, it was presented as an issue of state law;
therefore, ground one is not cognizable in this federal habeas
proceeding.

Of import, the purpose of a federal habeas proceeding is
review of the lawfulness of Petitioner's custody to determine
whether that custody is in violation of the Constitution or laws or
treaties of the United States.   See Coleman v. Thompson, 501 U.S.
722 (1991).   Therefore, this Court will not reexamine state-court
determinations on issues of state law.   See Estelle v. McGuire, 502
U.S. 62, 67-68 (1991).   Since this ground presents a state law
claim complaining about a ruling by the trial court, Petitioner is
not entitled to federal habeas corpus relief as there has been no
breach of a federal constitutional mandate.   Indeed, the federal
habeas corpus court will be bound by the Florida court's
interpretation of its own laws unless that interpretation breaches
a federal constitutional mandate.   McCoy v. Newsome, 953 F.2d 1252,
1264 (11th Cir. 1992) (per curiam), cert. denied, 504 U.S. 944
(1992).

In the alternative, to the extent Petitioner is now trying to
raise a due process claim pursuant to the Fourteenth Amendment of
the United States Constitution, such a claim was not exhausted in
the state court system.   Therefore, the due process claim is
procedurally barred from federal habeas review.   Petitioner has not
shown cause and prejudice or that a fundamental miscarriage of

justice will result if the court does not reach the claim on its merits.

Petitioner is not entitled to habeas relief on ground one of the Petition.  <u>See</u> Response at 11-12.

## B.  Ground Two

In ground two, Petitioner asserts that the trial court erred in denying his Rule 3.800(b)(2) motion based on <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  Petition at 7.  Petitioner contends that the jury instructions failed to advise the jury that the carrying and discharge of the firearm needed to be proved beyond a reasonable doubt.  <u>Id</u>.  Petitioner raised this ground in his Rule 3.800 motion.  Ex. 11.  The trial court denied relief.  Ex. 12. Petitioner appealed the trial court's decision.  Ex. 13 at 11-13. The First District Court of Appeal affirmed per curiam.  Ex. 15.

Jury instructions must be considered as a whole, in the context of the entire record.  <u>Estelle v. McGuire</u>, 502 U.S. at 72. Given the record, the trial court's instructions adequately informed the jury that all material allegations must be proved by the state beyond a reasonable doubt.

The information charged:

> that ALEJANDRO ROY FOWLER on the 19th day of February, 2003, in the County of Clay and the State of Florida, did carry a firearm, to-wit a handgun, and did unlawfully by force, violence, assault, or putting in fear, take money or other property, to-wit U S Currency, the property of Pizza Hut, as owner or custodian, from the person or custody of Margaret Wells, with the intent to permanently

> or temporarily deprive Margaret Wells of the
> money or other property, and during the
> commission of the aforementioned robbery, the
> said ALEJANDRO ROY FOWLER did discharge a
> firearm, contrary to the provisions of
> Sections 812 13(2)(a) and 775 087, Florida
> Statutes[.]

Ex. 2. Charged with armed robbery, Petitioner was facing a life sentence; charged with discharging the firearm, Petitioner was also facing a minimum mandatory term of twenty years in prison. Ex. 2, Ex. 8 at 120; Florida Statutes §§ 812.13(2)(a) and 775.087(2).

At the outset of the trial, the trial court advised the jury that they were selected and sworn as the jury to try a criminal case of a defendant charged with armed robbery. Ex. 4 at 8. The court instructed the jury: "It's your solemn responsibility to determine if the State has proved its accusation beyond a reasonable doubt against the defendant[.]" Id. at 8-9.

In the charge, the court instructed the jury as to the elements of the crime of armed robbery:

> To prove the crime of armed robbery, the
> State must prove the following four elements
> beyond a reasonable doubt[.]

> One  Alejandro Roy Fowler took money or
> other property from the person or custody of
> Margaret Wells.

> Two  Force, violence, assault, or putting
> in fear was used in the course of the
> taking[.]

> Three   The property taken was of some
> value[.]

> And Four  The taking was with the intent
> to permanently or temporarily deprive Margaret

- 9 -

> Wells of her right to the property or any
> benefit from it[.]

<u>Id</u>. at 272-73.

The court further instructed:

> The punishment provided by law for the
> crime of robbery is greater if "in the course
> of committing the robbery" the defendant
> carried some kind of weapon[.] An act is "in
> the course of committing the robbery" if it
> occurs in an attempt to commit robbery or in
> flight after the attempt or commission[.]
> Therefore, if you find the defendant guilty of
> robbery, you must then consider whether the
> State has further proved those aggravating
> circumstances and reflect this in your
> verdict[.]
>
> If you find that the defendant carried a
> firearm in the course of committing the
> robbery, you should find him guilty of robbery
> with a firearm[.]

<u>Id</u>. at 274.

With regard to reasonable doubt, the court instructed:

> The defendant has entered a plea of not
> guilty[.] This means you must presume or
> believe the defendant is innocent[.] **The
> presumption stays with the defendant as to
> each material allegation in the information
> through each stage of the trial unless it has
> been overcome by the evidence to the exclusion
> of and beyond a reasonable doubt[.]**
>
> To overcome the defendant's presumption
> of innocence the State has the burden of
> proving the crime with which the defendant is
> charged was committed and the defendant is the
> person who committed the crime.
>
> The defendant is not required to present
> evidence or prove anything[.]
>
> Whenever the words "reasonable doubt" are
> used you must consider the following[.] A

- 10 -

> reasonable doubt is not a mere possible doubt,
> a speculative, imaginary or forced doubt[.]
> Such a doubt must not influence you to return
> a verdict of not guilty if you have an abiding
> conviction of guilt[.] On the other hand, if,
> after carefully considering, comparing, and
> weighing all the evidence, there is not an
> abiding conviction of guilt, or, if, having a
> conviction, it is one which is not stable but
> one which wavers and vacillates, then the
> charge is not proved beyond every reasonable
> doubt and you must find the defendant not
> guilty because the doubt is reasonable[.]
>
>      It is to the evidence introduced in this
> trial, and to it alone, that you are to look
> for that proof[.]
>
>      A reasonable doubt as to the guilt of the
> defendant may arise from the evidence,
> conflict in the evidence, or the lack of
> evidence[.]
>
>      If you have a reasonable doubt, you
> should find the defendant not guilty.  If you
> have no reasonable doubt, you should find the
> defendant guilty[.]

Id. at 278-80 (emphasis added).

The court instructed the jury on its duty: "Your duty is to determine if the defendant has been proven guilty or not, in accord with the law. **It's the judge's job to determine a proper sentence if the defendant is found guilty**[.]" Id. at 283 (emphasis added). The court succinctly instructed: "Whatever verdict you render must be unanimous, that is, each juror must agree to the same verdict[.]"  Id.  Of additional relevance, the court instructed: "If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt[.] If you find that no offense has been proven beyond a reasonable doubt,

then of course, your verdict must be not guilty[.]"  <u>Id</u>. at 284.
Immediately following that instruction, the court said: "Only one
verdict may be returned as to the crime charged[.]  The verdict
must be unanimous, that is, all of you must agree to the same
verdict[.]"  <u>Id</u>.  The court then instructed the jury on the content
of the verdict form.   <u>Id</u>. at 284-86.   The court reviewed the
verdict form, line-by-line.   <u>Id</u>.   The court reminded the jury:
"Your verdict finding the defendant either guilty or not guilty
must be unanimous[.] The verdict must be the verdict of each juror,
as well as of the jury as a whole."  <u>Id</u>. at 286.

        The completed verdict form included the following findings
made by the jury:  "guilty of Robbery,"  Petitioner "carried a
firearm," and he "discharged a firearm[.]"  Ex. 6.  No objections
were made by the defense to either the instructions or the verdict
form.  Ex. 4 at 287.

        Petitioner, in his Rule 3.800 motion, asserted that the
instruction was "inadequate to satisfy <u>Apprendi</u>[4] because there is
no valid basis to conclude that a jury would understand the term
'material allegation' to include the firearm aggravator."  Ex. 11
at 3.  In addition, it urged the court to find that the jury could
properly reason that the firearm findings related to punishment or
sentencing, not the underlying issue of guilt.   <u>Id</u>.  Finally,

---

[4]  The holding in <u>Apprendi</u> requires that any fact that
increases the penalty beyond the statutory maximum must be
submitted to the jury and proved beyond a reasonable doubt.
<u>Apprendi</u>, 530 U.S. at 490-91.

Petitioner contended that the jury was not instructed that all of the findings had to be unanimous and established beyond a reasonable doubt, in violation of <u>Apprendi</u>.   <u>Id</u>. at 3-5.

Petitioner's claim has no merit.   The information charged Petitioner with carrying a firearm and discharging the firearm during the course of the offense.   Ex. 2.   The court instructed the jury as to the reasonable doubt standard, and the applicability of this standard to each material allegation in the information through each stage of the trial unless it is overcome by the evidence to the exclusion of and beyond a reasonable doubt.   After thoroughly being instructed on the elements of the offense, the state's burden of proof, and the findings with regard to the aggravating circumstances that must be made with regard to the firearm, the judge went over the verdict form line-by-line with the jury.   The jury returned a verdict finding Petitioner guilty of robbery, carrying a firearm, and discharging a firearm.   Ex. 6.   Of significance, the jury did not find that Petitioner carried a deadly weapon.   <u>Id</u>.

Petitioner is not entitled to relief on this ground.   After a review of the state court record and the applicable law, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

- 13 -

The state court's conclusion is fully supported by the record. Based on the jury instructions, the jury would readily understand the term material allegation to include the firearm aggravators (carrying and discharging a firearm) as these material allegations were clearly presented in the information, reiterated in the instructions, and precisely set forth in the verdict form.

Petitioner's concern that the jury could properly reason that the firearm findings related to punishment or sentencing, not the underlying issue of guilt, is unfounded.  The court specifically instructed the jury that its duty was to determine if the defendant has been proven guilty or not; its duty did not include punishment, and the jury was so instructed.

Finally, with regard to Petitioner's contention that the jury was not instructed that all of the findings had to be unanimous and established beyond a reasonable doubt, in violation of Apprendi, "[g]iven the record, the court's instructions adequately informed the jury that all material allegations were to be proved beyond a reasonable doubt." Whitier v. Sec'y, Fla. Dep't of Corr., No. 3:10-cv-166-J-34JBT, 2013 WL 804281, at *20 (M.D. Fla. Mar. 5, 2013) (not reported in F.Supp.2d).  Indeed, "the court's instructions to the jury must be considered, not in isolation, but as a whole in the context of the entire record." Id. (citing Estelle v. McGuire, 502 U.S. 62, 72 (1991)).  Thus, considering the instructions as a whole, in the context of the entire record of the state court proceeding, the trial court adequately instructed the

jury as to the state's burden to prove beyond a reasonable doubt all elements of the crime of robbery as well as the material allegations of carrying and discharging a firearm, and adequately instructed that the jury's findings must be unanimous.   See Response at 17-21.

Of note, "[a] jury is presumed to follow its instructions." Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citation omitted). Thus, assuming the jury followed its instructions, and considering the court's instructions as a whole, the Court finds Petitioner is not entitled to habeas relief.  Petitioner has not established that the state court's denial of this claim was contrary to or an unreasonable application of Apprendi or that its decision was based upon an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to habeas relief on his second ground.

## C.  Ground Three

In his third ground, Petitioner claims his trial counsel was ineffective for failure to object to a prior act of bad conduct and to move to suppress prior false statements of the Petitioner. Petition at 8.  In this ground, Petitioner asserts that he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's

representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

Petitioner exhausted this ground in the state court proceedings. See Response at 23-24. He raised this claim in ground one of his Rule 3.850 motion. Ex. 16; Ex. 17. The trial court denied relief on this ground. Ex. 19 at 118-19. The First District Court of Appeal affirmed the trial court's decision with respect to this ground. Ex. 24.

Of note, the trial court relied on the applicable two-pronged standard as set forth in Strickland as a preface to addressing Petitioner's claims of ineffective assistance of counsel. Ex. 19 at 118. Thus, the court recognized the applicable standard and it reported that all that is constitutionally required is reasonably effective counsel, not perfect or error-free counsel. Id.

In addressing the Strickland standard with respect to Petitioner's first ground, the court pointed out that counsel's performance was reasonably effective because, even if counsel had filed a motion to suppress, it would not have been granted.

The trial court explained:

> The Defendant's first claim of ineffective assistance of counsel alleges that defense counsel was ineffective because she did not file a motion to suppress the prior false statements made to law enforcement by

the Defendant.[5]  The Defendant contends credibility was at issue in the trial and defense counsel should have sought to have the false pre-arrest statements and self-identification excluded.  "Trial counsel's failure to file a motion to suppress the prescriptions was not ineffective assistance of counsel because we find that the motion to suppress would not, even if filed, properly have been granted.  There was no prejudice to defendant in the failure to file such a motion."  Gettel v. State, 449 So.2d 413 (Fla. 1984).  The Defendant has failed to establish that counsel's failure to file a motion to suppress the statements was outside the wide range of reasonable professional assistance. Strickland, 466 U.S. 668.  Accordingly, the Defendant's first ground for relief is denied.

Ex. 18 at 118-19.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, the Court recognizes that there is a strong presumption in favor of competence.  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"  Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).

Petitioner has failed to advance a persuasive argument that counsel's decision not to file a motion to suppress was

---

[5] Petitioner provided a false identification of himself to the police.  Petition at 8.

unreasonable or that this decision can be construed as conduct outside the wide range of professional representation. Further, Petitioner has not shown prejudice because he has not established that, if counsel had filed a motion to suppress, there is a reasonable probability that the outcome of the proceedings would have been different. Indeed, in this instance, the trial court said that a motion to suppress would not have properly been granted. Thus, in the present case, the Court concludes that there has been no showing of prejudice since Petitioner has failed to establish that the filing of a motion to suppress would have produced a different result.

In conclusion, not only has Petitioner failed to show deficient performance, he has failed to show that he was prejudiced by counsel's performance. Petitioner is not entitled to relief on ground three of the Petition, the claim of ineffective assistance of trial counsel. The state court's ruling is well-supported by the record and by controlling case law, Strickland and its progeny. Deference under AEDPA should be given to the state court's decision. Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed. This Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.

### D.   Ground Four

In ground four, Petitioner claims his trial counsel was ineffective for failure to move to suppress a confession obtained by police coercion.  Petition at 11.  He raised this ground in the second claim of his post-conviction motion.  Ex. 16; Ex. 17.  The trial court denied this ground.  Ex. 18 at 119.

The trial court rendered its decision stating:

> The Defendant's second ground for relief alleges that defense counsel was ineffective for failing to move to suppress the Defendant's confession which was "obtained by coercion."  During the trial, the testimony regarding the voluntariness of the Defendant[']s confession was proffered and found to be admissible.  (Exhibit "D.") Defense counsel stated on the record that she did not file a motion to suppress because there was no basis for one.  (Exhibit "D," page 156.)   The Defendant has failed to establish that a motion to suppress would have been granted, nor that counsel's actions were outside the range of reasonable professional assistance.  Gettel, 449 So.2d 413; Strickland, 466 U.S. 668.  The Defendant's second ground for relief is denied.

Ex. 18 at 119.  The appellate court affirmed.  Ex. 24.

At trial, defense counsel stated that "[t]here was never a suppression motion filed in this case, there was never a basis for one[.]"  Ex. 4 at 156.  Defense counsel's performance was not outside the wide range of professional competence.  The circuit court applied the appropriate standard, and found Petitioner was not entitled to post conviction relief.  The state court's ruling is supported by the record attachments and by controlling case law:

_Strickland_.   _See_ Ex. 18, Exhibit D.   The appellate court affirmed the circuit court's decision.   Thus, the decision to deny this ground is entitled to AEDPA deference.

Furthermore, Petitioner has failed to satisfy the prejudice prong of _Strickland_.   Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had filed a motion to suppress based on the alleged coercive tactics of the police.   The state court's adjudication of this claim is not contrary to or an unreasonable application of _Strickland_, or based on an unreasonable determination of the facts.   Petitioner is not entitled to habeas relief on ground four of the Petition.

## E.   Ground Five

In his fifth ground, Petitioner complains that his counsel was ineffective for failure to file a motion in limine to exclude testimony regarding the K-9 tracking or to make a proper and timely objection to the testimony regarding the K-9 tracking.   Petition at 14.   Petitioner raised this claim in ground three of his Rule 3.850 motion.   Ex. 16; Ex. 17.   Again, after identifying _Strickland_ as the applicable standard governing this type of claim, the trial court denied relief:

> In the third ground for relief, the Defendant alleges defense counsel should have filed a motion in limine regarding the canine units at the crime scene.   To the extent the Defendant's ground is comprehensible, it appears he is arguing the testimony regarding tracking done by the canine units should not

- 20 -

> have come in because it involved technical
> skills that the deputy should not have been
> allowed to discuss.  This Court notes defense
> counsel did object to the testimony at trial
> and was overruled.  (Exhibit "E," page 135.)
> The Defendant has failed to establish that a
> motion in limine would have been granted, nor
> that counsel's actions were outside the range
> of     reasonable    professional    assistance.
> Gettel, 449 So.2d 413; Strickland, 466 U.S.
> 668.  The Defendant's third ground for relief
> is denied.

Ex. 19 at 119.

Petitioner failed to raise this claim on appeal of the denial

of his Rule 3.850 motion.  Ex. 21.  The state, in its answer brief,

surmised that Petitioner abandoned his claim on this ground.  Ex.

22 at 16.  The state argued that Petitioner "implicitly conceded

that the judge's decision was correct as to that ground." Id.  Of

note, Petitioner did not mention the claim in his reply brief.  Ex.

23.

Respondents contend that Petitioner's failure to include this

ground in his initial appeal brief constituted abandonment of the

claim.  See Response at 35.  Respondents also assert that the claim

is unexhausted and procedurally defaulted.  Id. at 35-39.  The

Court is not convinced that Petitioner failed to exhaust this

ground, and an explanation follows.

Exhaustion requires that an appeal be taken from the denial of

a post conviction motion.  Leonard v. Wainwright, 601 F.2d 807, 808

(5th Cir. 1979) (per curiam).  A notice of appeal was filed, Ex.

20, as well as an appeal brief.  Ex. 21.  The First District Court

of Appeal affirmed on June 7, 2011.[6]  Ex. 24.  The mandate issued on August 2, 2011.  Id.

Pursuant to state law, Petitioner was required to file an appeal brief on the issues for which he received an evidentiary hearing on his Rule 3.850 motion.[7]  Rule 9.141(b)(3)(C), Fla. R. App. P.  Although he filed an appeal brief, he did not brief this particular claim, electing to brief different issues.  See Darity v. Sec'y, Dep't of Corr., 244 F. App'x 982, 984 (11th Cir. 2007) (per curiam) ("Florida Rule of Appellate Procedure 9.141(b)(2)(C) provides that, in an appeal from the summary denial of a Rule 3.850 motion without an evidentiary hearing '[n]o briefs or oral argument shall be required.'");  Cortes v. Gladish, 216 F. App'x 897, 899 (11th Cir. 2007) (per curiam) (finding failure to address issues in an appellate brief would constitute a waiver only if the Petitioner received an evidentiary hearing on a Rule 3.850 motion);  Rogers v. Sec'y, Dep't of Corr., No. 8:07-CV-1375-T-30TGW, 2010 WL 668261, at *53 (M.D. Fla. Feb. 19, 2010) (not reported in F.Supp.2d) (citing Cortes and finding Rogers waived and defaulted his claim by not briefing the claim, after receiving an evidentiary hearing on his Rule 3.851 motion in state court).

---

[6] The First District Court of Appeal stated that it affirmed "all but three of the issues that were summarily denied[.]" Ex. 24 at 1.  Thus, the state appellate court clearly stated its affirmance of this ground as it was not one of the summarily denied grounds remanded to the state court.  Id. at 2-3.

[7] Petitioner did not receive an evidentiary hearing on ground three of his Rule 3.850 motion.  Ex. 18.

Since Petitioner did not receive an evidentiary hearing on this ground, and since the First District Court of Appeal specifically stated that it affirmed this summarily denied claim of the trial court, see Ex. 24, the Court is not convinced that Petitioner failed to invoke one complete round of the state's established appellate review process by failing to expressly include the ground in his appellate briefs before the First District Court of Appeal. Under these circumstances, the Court finds the claim is exhausted and properly before the Court.

At trial, Marty Cotchaleovitch, of the Clay County Sheriff's Office, testified:

> Q    Through your investigation was a K-9 unit ever deployed to the scene?
>
> A    Yes.  Union County Correctional brought their people out with their hound dogs.
>
> Q    Where did those dogs track on, if anywhere?
>
> MS[.] COGDILL: Objection, Your Honor[.] It calls for expert testimony.  My objection is to competency.
>
> THE COURT: He can testify as to where the dogs went from there, can't he?
>
> MR[.] ZOMORODIAN[:] That's the State's argument[.]
>
> MS. COGDILL: Well, Your Honor, I believe -- can we approach?
>
> MR. ZOMORODIAN[:] Judge, it's not an opinion.
>
> THE COURT[:] He's just going to tell us what he observed, isn't he?

MR. ZOMORODIAN[:] That's right.

THE   COURT[:]   That's   not   an   opinion[.]
Objection overruled[.]

BY MR[.] ZOMORODIAN[:]

Q    You can answer the question[.]

A    Okay.   The exit point that the suspect
took was the back door, so the K-9 started at
the back door and they tracked through a field
to the area of Nightingale and Lakeview
Street[.]

Ex. 4 at 134-35.   Deputy Cotchaleovitch testified that he made

contact with Petitioner and Rayshaun Fowler the next day at 7455

Lakeview Street during a canvass of the neighborhood.   Id. at 136.

Petitioner asserts that it was appropriate for Deputy

Cotchaleovitch to testify as to what he observed, but counsel

should have objected to his use of the term "track on."   Petition

at 14.   Petitioner complains this term suggests technical skills,

requiring expert testimony from the dog-handler.   Id. at 14-15.   Of

note, counsel immediately objected when the term "track on" was

used by the prosecutor, asserting that the question calls for

expert testimony.   The trial court overruled her objection

concluding that the witness could testify as to what he observed,

including where the dogs went.   The witness testified that the dogs

ended up at Nightingale and Lakeview Street, and Petitioner and

Rayshaun Fowler were located on Lakeview Street the next day.

Here, counsel immediately objected to the question at issue.

Counsel's performance was not deficient in this regard.   Petitioner

was not prejudiced by counsel's performance.  If a motion in limine had been filed, based on the court's ruling during the trial concerning this testimony, the court would have simply limited the testimony to what the officer observed, including where the dogs went.  Indeed, on post conviction review, the trial court concluded that Petitioner failed to establish that a motion in limine to prevent testimony concerning the canine units at the crime scene would have been granted.  Ex. 18 at 119.

Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had filed a motion in limine.  Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.  Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the <u>Strickland</u> ineffectiveness claim.  In sum, the decision was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on ground five.

### F.  Ground Six

Petitioner, in his sixth ground, claims he received ineffective assistance of trial counsel for her failure to request a voice identification or to permit Petitioner to speak in the presence of the victims. Petition at 16.  Petitioner was informed, prior to trial, that one of the victims recognized the voice of the

robber, stating it was a familiar voice. Id. Petitioner asked his counsel to place him in a voice line-up, or be given an opportunity to speak at trial in the presence of the victim and the jury. Id. at 17.

At the evidentiary hearing on his Rule 3.850 motion, Petitioner stated he had a distinct Bronx, New York accent. Ex. 18 at 8.[8] Jennifer Cogdill, Petitioner's defense counsel, testified that Petitioner did not request a voice line-up or voice identification during trial, but he did discuss the issue with her. Id. at 26. She felt there was not "anything specifically distinctive about his voice[.]" Id. at 27. None of the victims could identify Petitioner as the robber. Id. Counsel did not know how the victims would respond to Petitioner's voice. Id. She was aware that one of the victims said the voice of the robber was familiar to him, but he did not know why it was familiar. Id. at 28.

Ms. Cogdill thoroughly explained her decision not to request a voice line-up or identification:

> A    And to me at that point to take a chance on having Mr. Fowler give -- you know, speak for this person and possibly have that witness say, yes, that's the voice that I remember that was too big of a risk to take.

---

[8] With respect to the evidentiary hearing transcript, the Court will reference the page numbers of the transcript, not the Bates stamp number.

Q    Okay.   And did you discuss these reasons for not doing this voice line-up or voice identification in court with Mr. Fowler?

A    I did before the trial, yes.

Q    And what did you tell him as the reason why you did not do it or you were not going to do it?

A    Well, because I -- it wasn't an issue to me.   There wasn't anything distinctive enough about his voice that I believe the jury would hear him speak and say, you know, he has an accent, therefore he couldn't have been the people -- the person who was identified by the witnesses.   I just didn't believe that that was going to happen.

Q    In your professional opinion do you think it would have definitely helped Mr. Fowler's chances at trial if you had performed this voice identification procedure?

A    No.   There was nothing connecting him -- there was no way that any of the eye witnesses, any of the victims could connect him specifically to being the person in the Pizza Hut with the gun.   All they could identify was a young black male.   That was it.

All they could say about the way he spoke was that it was aggressive and that there was foul language.   They could not identify anything else, so it was all of the other evidence that connected him to the robbery so why would I give them a chance to strengthen that connection?

Ex. 18 at 28-29.

Ms. Cogdill further attested that she did speak to Petitioner about her reasons for not putting his voice before the victim, and he understood her advice and accepted it.   <u>Id</u>. at 29.   Defense

- 27 -

counsel concluded that Petitioner was in agreement with her trial strategy.  Id.

Petitioner raised this claim in ground four of his Rule 3.850 motion.   Ex. 16; Ex. 17.   After recognizing the two-pronged standard set forth in Strickland, the trial court held:

> The Defendant's fourth ground for relief alleges defense counsel should have requested a voice identification of the Defendant, or at the very least to have permitted the Defendant to speak in presence of victims.   At the evidentiary hearing, defense counsel testified that she did not notice any distinctive accent that would distinguish the Defendant as being someone from the Bronx.   (Exhibit "A," page 26.)   Defense counsel also testified that the Defendant did request a voice identification to occur during the trial, but that she did not do that because she was not sure how the victims would have responded, and felt it was too big of a risk.   (Exhibit "A," page 27-28.) Defense counsel's decision was a matter of trial strategy, which will not be second guessed.   Songer v. State, 419 So.2d 1044, (Fla. 1982); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.").   The Defendant's fourth ground for relief is denied.

Ex. 19 at 19-20.  The First District Court of Appeal affirmed this decision.  Ex. 24.

Counsel's judgment that a voice line-up or a voice identification procedure at trial was simply too risky, particularly when the victims were unable to identify Petitioner, is the type of strategic decision that Strickland insulates from

second-guessing.[9]  See Hittson v. GDCP Warden, 759 F.3d 1210, 1248-49 (11th Cir. 2014) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir.1995) (en banc) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.")), petition for cert. filed, (U.S. Feb. 23, 2015) (No. 14-8589, 14A549).  Applying the "highly deferential" scrutiny to Ms. Cogdill's strategic decisions, as required by Strickland, the Court concludes that Petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness and that there was a reasonable probability that the results of the proceeding would have been different but for these strategic decisions.

Petitioner is not entitled to relief on ground six of the Petition, the claim of ineffective assistance of trial counsel. The state court's ruling is supported by controlling case law, Strickland and its progeny.  Deference, under AEDPA, should be given to the state court's holding.  Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed.  This Court concludes that the adjudication of this claim of ineffective assistance of counsel is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.

---

[9] It is noteworthy that Petitioner decided to take the stand, against the advice of counsel.  See Ex. 18 at 30.  Therefore, the victims and the jury ultimately heard his voice.  Ex. 4 at 181-229.

### G.   Ground Seven

In his seventh ground, Petitioner claims his counsel provided ineffective assistance based on her failure to conduct anticipatory rehabilitation with regard to Petitioner's prior conviction. Petition at 19.  Petitioner states that his counsel brought forth during direct examination that Petitioner was convicted of a prior felony.   Id.   Petitioner contends that counsel should have mitigated this fact by explaining the circumstances of his prior conviction.   Id. Primarily, Petitioner wanted the jury to be informed that his prior conviction was the result of a guilty plea, showing that previously, he took responsibility for his actions. Id. at 20.

At the evidentiary hearing, Ms. Cogdill testified that based on the law, if she had tried to introduce evidence that Petitioner pled guilty to a non-violent offense, she would have opened the door to the state to cross examine Petitioner concerning the specific nature of his prior felony conviction.  Ex. 18 at 31.  She further testified that the prior felony conviction was possession with intent to distribute or sell cocaine.   Id. at 32.   She believed that "letting the jury know that he was a convicted drug dealer" was certainly not going to enhance his credibility.   Id. She explained:

> I don't believe people tend to think that
> drug dealers are credible people.  Plus there
> is also the violence issue.  I think people
> associate drug dealers with violence, and this
> is a case where we have got an unemployed

> person with a gun and accused of using a gun
> in a robbery.  I thought this would strengthen
> the state's case.

Id.

Ms. Cogdill further explained that she took steps, by filing

a motion in limine, to exclude drug-related evidence (drugs found

in Petitioner's residence and his statement that he committed the

robbery in order to obtain money to purchase drugs).  Id. at 33.

Through defense counsel's defensive tactics, she was able to keep

the jury from hearing about the prior drug conviction and the drug-

related evidence obtained in the armed robbery case.   Id.

Petitioner raised his claim in the fifth ground of his Rule

3.850 motion.   Ex. 16; Ex. 17.   The trial court, after the

evidentiary hearing, denied this claim:

> In the Defendant's fifth ground for
> relief, he alleges defense counsel was
> ineffective for failing to conduct
> "anticipatory rehabilitation" with regards to
> the Defendant's prior conviction of a felony.
> The Defendant contends defense counsel should
> have explained the circumstances and charge
> behind this line of questioning, rather than
> just establishing that the Defendant had been
> charged with a felony.   At the evidentiary
> hearing defense counsel testified that she
> believed the Defendant's credibility would
> have been hurt if information regarding his
> prior felony had come out during trial.
> (Exhibit "A," page 32.)   Defense counsel
> stated she did not want the Defendant
> associated with drug dealers, and felt it
> would have strengthened the State's case.
> (Exhibit "A," page 32.)   The Defendant has
> failed to establish the actions of defense
> counsel were not reasonable.   Strickland, 466
> U.S. 668.   Additionally, defense counsel's
> decision was a matter of trial strategy, which

- 31 -

> will not be second guessed. <u>Songer v. State</u>,
> 419 So.2d 1044, (Fla. 1982); <u>Gonzalez v.
> State</u>, 579 So.2d 145, 146 (Fla. 3d DCA 1991)
> ("Tactical decisions of counsel do not
> constitute ineffective assistance of
> counsel."). The Defendant's fifth ground for
> relief is denied.

Ex. 19 at 120. The First District Court of Appeal affirmed this decision. Ex. 24.

The state court's decision is entitled to deference under AEDPA. <u>See</u> Response at 47-50. The decision involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground seven, the claim of ineffective assistance of trial counsel, because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## H. Ground Eight

Petitioner, in ground eight of the Petition, asserts that his trial counsel was ineffective for failure to object to the state's impermissible questioning regarding the truthfulness of witnesses' testimony. Petition at 22. Petitioner raised this claim as ground six of his Rule 3.850 motion. Ex. 16; Ex. 17. Upon remand from the First District Court of Appeal, the trial court readdressed this claim. At the outset of its opinion, the court set forth the two-pronged <u>Strickland</u> standard governing claims of ineffective

- 32 -

assistance of counsel.  Ex. 26 at 391.  In particular, the court

noted that "[t]o establish prejudice [a defendant] 'must show that

there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome.'"  Id. (citation omitted).

In addressing Petitioner's claim, the court held:

> The Defendant's sixth ground for relief
> alleges counsel was ineffective for failing to
> object to the State's line of questioning of
> Defendant regarding the truthfulness of
> another witness's testimony.  Specifically,
> Defendant claims that it was improper for the
> prosecutor to cross-examine Defendant as to
> whether the testimony of the two State
> witnesses was fabricated.  Defendant contends
> these questions were "highly prejudicial
> because the jury could not reconcile the
> witnesses' testimony without coming to the
> conclusion that either [Defendant] or the
> witnesses [were] lying." (Defendant's Motion
> at 13.)  Having reviewed the record, the
> prosecutor's questions do appear improper.
> However, under the circumstances of this case,
> the Court finds there is not a reasonable
> possibility that the questions so affected the
> jury's view of Defendant's credibility that it
> contributed to the verdict.  See State v.
> DiGuilo, 491 So.2d 1129, 1139 (Fla. 1986)
> (defining test of harmless error as whether
> appellate court can conclude beyond a
> reasonable doubt that the error did not affect
> the verdict).

Ex. 26 at 391-92.

The court referenced the testimony of Ms. Beck, Petitioner's

friend, who testified at trial that Petitioner told her he was

planning to rob the Pizza Hut, he confirmed that he had robbed the

Pizza Hut, and he brought her a duffel bag.  Id. at 392.  Ms. Beck led the police to the duffel bag, which contained the suspect's clothing, bandana and gun.  Id.  The court also referred to the trial testimony of Rayshaun Fowler, Petitioner's cousin.  Id. Rayshaun Fowler testified that he dropped Petitioner off at the plaza where the Pizza Hut is located.  Id.  Rayshaun Fowler said that Petitioner told him he robbed the Pizza Hut.  Id.  Finally, Rayshaun Fowler corroborated Ms. Beck's testimony about the duffel bag.  Id.

The court relied on the fact that the police detectives who interviewed Petitioner testified that Petitioner initially provided a false name and information, and then relating, after further investigation, Petitioner admitted that he was the person who robbed the Pizza Hut.  Id. at 393.  Further, Petitioner provided a sworn written confession.  Id. at 393-94.  The trial court noted that Petitioner took the stand at trial and admitted that he was with his cousin on the night of the robbery, his gun was used in the robbery, and he asked Ms. Beck to hold the duffel bag, but testified that Michael Gillian committed the robbery.  Id. at 394. The court also pointed out that Petitioner said he was coerced into making a false confession by threats of imprisonment.  Id.

In its decision, the trial court quoted the improper questioning of Petitioner by the state:

- 34 -

On cross-examination of Defendant, the prosecutor engaged in the following line of questioning:

STATE:   [Y]ou called Mykala [Beck] and told her you committed the robbery, didn't you?

DEFENDANT: No, I didn't.

STATE: And you called Mykala [Beck] after you committed the robbery and you told her, didn't you?

DEFENDANT: No, I didn't.

STATE: So you're saying Mykala Beck came in here and sat on that stand and made a complete fabrication about that?

DEFENDANT: Yes.

STATE: And you're saying Rayshaun Fowler did the same thing?

DEFENDANT: Yes.

Id. at 394-95.

The trial court noted that the state continued this line of questioning by asking if this constituted a conspiracy between Ms. Beck and Petitioner's cousin, and that defense counsel objected to the conspiracy question.  Id. at 395.  The trial court, in its order denying post conviction relief, found this line of questioning improper, but also determined that "after examination of the record, the Court finds the resulting error to be harmless and did not contribute or affect the jury's determination that Defendant was guilty of robbery."  Id.

In summation, the trial court rejected this ground based on the facts and circumstances of the case, including a written confession to the crime.  Id.  In supporting its conclusion that the improper line of questioning was harmless, the court said:

> The jury was read Defendant's written confession, in which he not only admitted robbing the Pizza Hit [sic], but also expressed remorse for his actions and stated he did it because he needed the money to pay his bills.  In addition, allowing for small differences, Ms. Beck and Mr. Fowler described in consistent fashion Defendant's actions both before and after the robbery.  Moreover, Defendant's own trial testimony tended to corroborate their testimony.  Defendant now claims he suffered prejudice in that "the jury could not reconcile the witnesses' testimony without coming to the conclusion that either [Defendant] or the witnesses [were] lying." However, Defendant's credibility was already in question when he admitted that he repeatedly lied to police officials as to his knowledge of this particular case.  In addition, whatever alleged motive these witnesses had to falsely incriminate Defendant was explored fully before the jury.  In these circumstances, the Court finds Defendant cannot demonstrate beyond a reasonable doubt that the error committed affected or influence[d] the jury's verdict.  Accordingly, Defendant's sixth ground for relief is denied.

Id.  The First District Court of Appeal affirmed the decision of the trial court.  Ex. 30.

The factual determinations, including credibility determinations, made by the trial court are entitled to deference under AEDPA.  28 U.S.C. § 2254(e).  To the extent the court denied Petitioner's claim of ineffective assistance of counsel applying

- 36 -

the appropriate Strickland standard, the decision to deny post conviction relief on this ground is entitled to AEDPA deference. In the alternative, to the extent the trial court applied "a modified harmless error standard" to address the ineffective assistance of counsel claim, Petitioner is still not entitled to habeas relief because there is no reasonable probability that the outcome of Petitioner's trial would have been different but for counsel's failure to object. See Response at 56-58.

The record reflects extensive and persuasive evidence against Petitioner. Taking into account his confession, the testimony of Ms. Beck and Rayshaun Fowler, the fact that Petitioner's gun was used to commit the crime, and the testimony of the police officers and the victims, the improper questioning by the prosecutor about whether portions of Ms. Beck and Rayshaun Fowler's testimony were fabricated, when considering the totality of the evidence, did not result in a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

As recently noted by the Eleventh Circuit: "Once a court decides that the prejudice prong has not been met, it need not decide whether the performance prong has been satisfied. See Duren v. Hopper, 161 F.3d 655, 660 (11th Cir.1998)." Matos v. Sec'y, Fla. Dep't of Corr., No. 13-11190, 2015 WL 755354, at *3 (11th Cir. Feb. 24, 2015) (per curiam). Here, Petitioner has failed to

satisfy the second prong of the two-pronged test set forth in Strickland; therefore, he is not entitled to habeas relief on ground eight.  The state courts' adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.

## I.  Ground Nine

In his ninth ground, Petitioner asserts that his trial counsel was ineffective for failure to object to the improper shift of the burden of proof.  Petition at 24.  Petitioner states that during closing argument, the prosecutor said that Petitioner failed to proclaim his innocence during the police investigation.  Id. Petitioner raised this issue in his post conviction attack of his conviction as ground seven of his Rule 3.850 motion.  Ex. 16; Ex. 17.  On remand from the First District Court of Appeal, after setting forth the Strickland standard of review governing claims of ineffective assistance of counsel, the trial court addressed this claim.  Ex. 26 at 391.  The court denied the ground stating:

> The Defendant's seventh ground for relief alleges that defense counsel was ineffective for failing to object to an "improper shift of the burden of proof" by the State.  The Defendant contends that comments made by the prosecutor referencing the Defendant's actions during police investigations were inappropriate.  Initially, this Court notes that attorneys are allowed wide latitude to argue to the jury during closing argument. Breedlove v. State, 413 So.2d 1, 8 (Fla. 1982).  Attorneys may also draw logical inferences and advance legitimate arguments in their closing statements.  Thomas v. State,

748 So.2d 970, 984 (Fla. 1984).   Therefore,
when a defendant claims that a prosecutor has
made an improper comment during closing
argument such that a new trial is required,
the defendant must show that:

> The comments must either deprive the
> Defendant of a fair and impartial
> trial, materially contribute to the
> conviction, be so harmful or
> fundamentally tainted as to require
> a new trial, or be so inflammatory
> that they might have influenced the
> jury to reach a more severe verdict
> than that it would have otherwise.

Walls v. State, 926 So.2d 1156, 1167 (Fla.
2006), citing Spencer v. State, 645 So.2d 377,
383 (Fla. 1994).   According to the Defendant's
motion, the objectionable comments occurred
when the prosecutor stated a "law abiding
citizen would have run out to Police and say,
hey I got to tell you something . . . Did he
(Movant) do that?    No he didn't."
(Defendant's Motion at 17.)   A review of the
trial transcript shows the comments made
during closing were as follow[s]:

> The police were in the neighborhood.
> Isn't it reasonable to believe that
> a law abiding citizen would run out
> to the police and say hey, I got to
> tell you something.   There's a gun
> in here that was used in this armed
> robbery.   And these guys, I want to
> tell you who they are.
>
> Did he do that?   No, he didn't.

(Exhibit "E," page 259.)   Taken in isolation,
the prosecutor's comment may be deemed
improper.   However, even assuming arguendo
that the comments complained of were improper,
the Court finds that they were not
sufficiently egregious as to require reversal.
When viewed in the aggregate, these comments
were not the focus of the prosecutor's closing
argument.   As discussed with respect to

Defendant's sixth claim for relief, the jury
was presented sufficient competent evidence to
support the guilty verdict as to armed
robbery, including Defendant's written
confession to law enforcement detailing his
commission of the armed robbery. Considering
the alleged errors and the totality of the
evidence against Defendant, there is not a
reasonable probability that these comments
contributed to the conviction. Hall v. State,
444 So.2d 1019 (Fla. 3d DCA 1984) (holding
prosecutor's comments were harmless in light
of the overwhelming evidence against the
defendant, including the testimony of two
eyewitnesses). Accordingly, the Court finds
the effect of the prosecutor's comments did
not prejudice the jury or impair the fairness
of the proceeding. For these reasons,
Defendant's seventh ground for relief is
denied.

Ex. 26 at 396-97. The First District Court of Appeal affirmed.
Ex. 30.

The factual determinations made by the court are entitled to
AEDPA deference. 28 U.S.C. § 2254(e). See Response at 62. The
court found that the prosecutor's comments did not prejudice the
jury or impair the fairness of the proceeding. Since there was no
demonstration of prejudice, the court rejected Petitioner's claim
for post conviction relief. Of importance, "[t]he state court need
not cite to, or even be aware of, Supreme Court precedent, so long
as its decision is not inconsistent therewith." Matos v. Sec'y,
Fla. Dep't of Corr., 2015 WL 755354, at *3 (citing Early v. Packer,
537 U.S. 3, 8 (2002) (per curiam)). Here, the state court's
decision is not inconsistent with Supreme Court precedent,
including Strickland and its progeny. The state courts'

- 40 -

adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.   Alternatively, Petitioner is not entitled to habeas relief on this ground because he has not shown the requisite prejudice to meet the <u>Strickland</u> standard.

### J.   Ground Ten

In ground ten, Petitioner claims his counsel was ineffective for failure to object to the state's impermissible vouching for police witnesses.   Petition at 27.   He raised the claim in ground eight of his Rule 3.850 motion.   Ex. 16; Ex. 17.   In his motion, Petitioner complained that during closing arguments, the jury was told that the police witnesses' credibility was not in question and that the jury could believe the testimony of the police.

During closing argument, the prosecutor said:

> Now ladies and gentlemen, another thing you can take into consideration is how the evidence technician Mike Layne, and evidence technician Deputy Sheriff Kittles, and how Detective Cotchaleovitch, and Detective Bucci came in here and they testified with utmost professionalism[.] You can believe what they have to say[.] Their credibility really isn't in question here[.]

Ex. 4 at 262-63.

The trial court, in its order denying post conviction relief, held:

> In the eighth ground for relief, the Defendant alleges that defense counsel was ineffective for failing to object to an improper bolstering of law enforcement

> credibility by the State during closing
> arguments.    At the evidentiary hearing,
> defense counsel testified that even if she had
> objected to the comments made by the State,
> the comments were not strong enough or
> prejudicial enough to warrant a mistrial.
> (Exhibit "A," page 34.)  Additionally, defense
> counsel testified she did not want a mistrial
> because she felt the trial was going as well
> as it possibly could have.   (Exhibit "A,"
> pages 34-35.)  Defense counsel's decision was
> a matter of trial strategy, which will not be
> second guessed.  Songer v. State, 419 So.2d
> 1044, (Fla. 1982); Gonzalez v. State, 579
> So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical
> decisions of counsel do not constitute
> ineffective assistance of counsel.").   The
> Defendant's eighth ground for relief is
> denied.

Ex. 19 at 122.

Petitioner appealed the denial of this ground, and the First

District Court of Appeal affirmed the decision of the trial court.

Ex. 24.  Thus, his claim of ineffective assistance of counsel was

adjudicated on its merits.  It is entitled to AEDPA deference and

double deferential judicial review.

Upon review of the evidentiary hearing testimony, Ms. Cogdill

explained her reasoning for not objecting to the prosecutor's

statement during the closing argument.  She related that she did

not think the statement was strong enough or prejudicial enough to

warrant a mistrial at that point in the trial.  Ex. 18 at 34.  More

importantly, she stated she did not want a mistrial.  Id. at 34-35.

She feared the state's case would only get stronger on retrial,

with the state knowing "everything you have got to say."  Id.  She

surmised that if she had objected to the state's closing argument on this point, and the court sustained the objection, it would not have affected the outcome of the trial.  Id. at 35-36.

Of note, defense counsel stated she turned the prosecutor's statement to her advantage by arguing that the state's attempt to persuade the jury that the police officers had no interest in the case by asserting their credibility was not at issue was not believable because they did have an interest in the case, as reflected by their efforts to get Ms. Beck and Rayshaun Fowler to testify by threatening them with more time and charges or by offering them a better deal if they testified.  Ex. 18 at 36.  In sum, Ms. Cogdill believed she was able to make a powerful and effective argument for the defense in response to the state's argument.  Id.

After the evidentiary hearing, the trial court credited defense counsel's testimony and found her testimony to be persuasive.  "As we see it, in this case the state court had plausible reasons to credit the attorney's version of the facts over the petitioner's; taken together, these considerations render the state court's determination reasonable."  Landers v. Warden, Attorney Gen. of Ala., 776 F.3d 1288, 1297 (11th Cir. 2015).  The factual determinations of the trial court are entitled to deference.  28 U.S.C. § 2254(e).  Petitioner has not rebutted the presumption of correctness by clear and convincing evidence.  Id.

Upon review, defense counsel made a reasoned tactical decision not to object to the prosecutor's statement during closing argument, and Ms. Cogdill was able to effectively attack the prosecutor's argument through her closing argument. Under these circumstances, counsel's performance was well within the wide range of reasonable professional assistance. Moreover, Petitioner was not prejudiced by counsel's performance. Indeed, the decision of the state court is entitled to deference under AEDPA. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002). The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on his Petition because the state court's decision was not contrary to clearly established federal law, Strickland and its progeny; did not involve an unreasonable application of clearly established federal law; and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to habeas relief on ground ten.

### K.  Ground Eleven

Petitioner's eleventh ground is a claim of newly discovered evidence. Petition at 30. Petitioner claims that there has been

recantation of trial testimony by a state's witness, Petitioner's cousin Rayshaun Fowler. Id. Petitioner raised this claim in ground nine of his Rule 3.850 motion. Ex. 16; Ex. 17. Petitioner submitted a one-page, unsigned letter dated November 4, 2003, apparently from Rayshaun Fowler, stating that he felt like he had to lie and blame Petitioner for the crime due to pressure from the police. Ex. 17 at 98.

The trial court rejected this ground after Petitioner failed to provide the court with a complete copy of Rayshaun Fowler's letter. Ex. 26 at 397-98. The court found that even if Petitioner had provided a complete copy of the letter, "based upon a review of the transcripts from the entire trial, this Court is not inclined to find the recanted testimony would have resulted in a different verdict." Id. (citation omitted). After referencing case law recognizing that recanted testimony is exceedingly unreliable and subject to exacting scrutiny, the court further found that "the recanting witness's testimony has not changed to such an extent as to render probable a different verdict." Id. at 398.

Petitioner appealed the denial of this ground, claiming he never received the trial court's order to provide a complete copy of the letter. Ex. 28 at 7-8. Petitioner submitted an unsworn, signed Affidavit by Rayshaun Fowler in which the affiant mentioned that Sergeant Chandler "forced me to lie on my uncle." Ex. 28, Exhibit A, Affidavit. The First District Court of Appeal affirmed

the decision of the trial court and denied rehearing.  Ex. 30; Ex. 31.

Generally, claims of actual innocence are raised in three different types of habeas cases, and in one type, "a petitioner's actual innocence is itself the constitutional basis of the habeas petition."  <u>Trease v. Sec'y, Dep't of Corr.</u>, No. 8:11-cv-233-T-23TBM, 2014 WL 4791996, at *2 (M.D. Fla. Sept. 24, 2014) (citations omitted).  In the instant case, it is clear Petitioner is raising an actual innocence claim as the constitutional basis for his claim in ground eleven.  The Eleventh Circuit, however, has stated, "[f]or what it is worth, our precedent **forbids** granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases."  <u>Jordan v. Sec'y, Dep't of Corr.</u>, 485 F.3d 1351, 1356 (11th Cir.) (citing <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1065 (11th Cir. 2002)) (emphasis added), <u>cert</u>. <u>denied</u>, 522 U.S. 979 (2007).  Also of import, <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1064-65 (11th Cir. 2002), factually concerned a key state's witness disavowing his testimony implicating the defendant.  The Eleventh Circuit denied habeas relief in <u>Brownlee</u> finding:

> Finally, even if Goodgame's recantation were credible (and the trial court has squarely found that it was not), the Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." <u>Herrera v. Collins</u>, 506 U.S. 390, 400, 113 S.Ct. 853,

860, 122 L.Ed.2d 203 (1993). It is not our
role to make an independent determination of a
petitioner's guilt or innocence based on
evidence that has emerged since the trial.
"This rule is grounded in the principle that
federal habeas courts sit to ensure that
individuals are not imprisoned in violation of
the Constitution—not to correct errors of
fact." Id. Brownlee alleges no independent
constitutional violation relating to
Goodgame's recantation, and he is therefore
entitled to no federal habeas relief on this
claim.

Brownlee v. Haley, 306 F.3d at 1065.

It is noteworthy that the case before the Court is not a
capital case. Additionally, through his Petition, Petitioner is
asking this Court to correct an alleged error of fact. This Court
cannot grant habeas relief on Petitioner's claim of actual
innocence; absent an independent constitutional violation occurring
in the underlying state criminal proceeding, the claim of actual
innocence based on newly discovered evidence raised in ground
eleven does not state a ground for federal habeas relief. See In
re: Davis, 565 F.3d 810, 817 (11th Cir. 2009) (per curiam)
(discussing freestanding actual innocence claims). No federal
habeas relief is available for freestanding, non-capital claims of
actual innocence. Murrah v. McDonough, 256 F. App'x 323, 325 (11th
Cir. 2007) (per curiam) (a certificate of appealability was granted
on the issue of the trustworthiness and effect of the alleged
videotaped witness recantation; however, the Eleventh Circuit found

that "Murrah's freestanding actual innocence claim is not cognizable under federal habeas law.").

Petitioner does not allege the implication of an independent constitutional violation.  His claim of actual innocence, a freestanding claim, is not cognizable in this non-capital, federal habeas proceeding.  As a result, Petitioner is not entitled to habeas relief on ground eleven.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[10]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

     **DONE AND ORDERED** at Jacksonville, Florida, this 31st day of March, 2015.

_____
BRIAN J. DAVIS
United States District Judge


sa 3/24
c:
Alejandro R. Fowler
Counsel of Record

- 49 -